IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| Laura Rucinsky,<br>    *Plaintiff*, | §<br>§<br>§ | |
| v. | §<br>§ | Civil Action No. 4:19-cv-01038 |
| UHS of Delaware, Inc.<br>    *Defendant*. | §<br>§<br>§ | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

Plaintiff Laura Rucinsky ("Plaintiff") hereby submits this Memorandum in Opposition to Defendant's Motion to Compel arbitration, and states as follows:

### I.

### Introduction

This case stems from Plaintiff's attempt to secure employment with Defendant and Defendant's failure to follow federal statutory law when it used a consumer report to rescind a job offer in violation of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq. ("FCRA"). After eight months of litigation and participation by Defendant, it produced an application purportedly "signed" by Plaintiff containing a broad and unconscionable arbitration clause it now seeks to enforce, placing Plaintiff's claims at risk of never being vindicated. Plaintiff asks the Court to deny Defendant's Motion and allow her to proceed with her claims in this Court.

### II.

### Relevant Facts

In or about August 2018, Plaintiff began having discussions with Defendant about career opportunities at Kingwood Pines Hospital, a treatment center in Kingwood, Texas, owned and

1

operated by Defendant. During these discussions with Defendant's agents, including the CEO and Director of Business Development at Kingwood Pines Hospital, Plaintiff was open and honest about her nonviolent criminal convictions from the 1980s. *Compl. at ¶¶6-7.*

On November 9, 2018, after having multiple discussions with Defendant's agents and upon their request and encouragement, Plaintiff "officially" applied for a Community Liaison – Marketing Representative position with Defendant at Kingwood Pines Hospital. Three days later, Defendant offered her the position, and Plaintiff accepted that same day. Defendant directed Plaintiff to complete a drug screen and told her that she would receive an email from "Prechecks" to start a background verification. Plaintiff completed the drug screen and other "pre-hire" requirements as requested by Defendant without issue. *Compl. at ¶¶8-13.*

Sometime in November 2018, Defendant engaged a third-party vendor, PreCheck, Inc., to perform a "pre-employment" background check on Plaintiff. PreCheck, Inc. is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f) that regularly engages in assembling or evaluating information on consumers for the purpose of furnishing "consumer reports" to third parties, including Defendant, to be used in evaluating candidates and employees. Upon information and belief, PreCheck, Inc. compiled and provided a "consumer report" regarding Plaintiff for employment purposes to Defendant. *Compl. at ¶¶15-17.*

On or about November 28, 2018, days before Plaintiff was set to start her new job, Defendant requested that Plaintiff report to Human Resources for questioning. During the November 28th meeting, Defendant's agents questioned Plaintiff regarding her decades-old convictions for approximately 45 minutes and thereafter escorted her from the building. Over the course of the following days Plaintiff attempted to contact Defendant via phone and email to

follow-up on the conversation that occurred on November 28th and to determine the status of her impending employment. *Compl. at ¶¶19-21.*

On November 30, 2018 Plaintiff reached Defendant's agent, Sherry Williams, by phone and was told that Defendant does not hire ex-cons, and in doing so took "adverse action" by denying or rescinding employment based in whole or in part on the contents of the consumer report provided by PreCheck, Inc. Defendant did not provide Plaintiff a copy of the consumer report and a description of her rights in violation of 15 U.S.C. § 1681b(b)(3); an adverse action notice in violation of 15 U.S.C. § 1681m(a); notice of her right to obtain a free copy of the consumer report, or her right to dispute the accuracy or completeness of any information in a consumer report, in violation of 15 U.S.C. § 1681m(a)(4). *Compl. at ¶¶22-26.*

On March 20, 2019, Plaintiff filed her Complaint alleging multiple violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681 et seq., based on Defendant's failure to provide Plaintiff with a copy of her consumer report and other mandatory disclosures after taking adverse action against her. *Doc. No. 1.* Defendant waived service of the Complaint, requested and was granted an extension to file a response. *Doc. Nos. 3-5.* Defendant filed an Answer on May 30, 2019. *Doc. No. 6.* Defendant did not raise the existence of an arbitration agreement or the desire to arbitrate therein and admitted jurisdiction and venue were proper. *Id. at ¶¶2-3.*

On June 21, 2019, an initial pretrial and scheduling conference was held. *See Doc. Nos. 2, 9.* In preparation, the parties met, conferred regarding settlement and scheduling, and filed a Joint Discovery/Case Management Plan as required. *Doc. No. 8.* Arbitration was never mentioned during this process or in the Plan.

On June 21, 2019, Defendant served Initial Disclosures, but again, there was no mentioning of arbitration or an alleged arbitration agreement.

On August 21, 2019, Plaintiff served written discovery requests. After an extension was granted, Defendant served responses on October 4, 2019. Defendant did not provide any documents referring to or alleging the existence of an arbitration agreement.

On October 18, 2019, Defendant produced additional documents, including a purported employment application containing the arbitration provision it now seeks to enforce. On October 28, 2019, Defendant emailed Plaintiff advising of the intent to file a Motion to Compel Arbitration. Defendant filed its Motion to Compel Arbitration (the "Motion") on November 1, 2019. *Doc. No. 10.*

The discovery deadline passed on November 20, 2019. Defendant served written discovery on November 19, 2019, but Plaintiff has taken the position a response is not required since the discovery deadline has already passed. The motion deadline is set for December 20th. *See Doc. No. 9.*

### III.

### Argument and Authorities

Defendant asks the Court to compel arbitration – eight months after this case was initiated – because, it argues, she "expressly agreed to submit 'all claims, disputes or controversies arising out of or relating to [her] application or candidacy for employment" to arbitration. *Def. Mtn. at p. 1*. In support, Defendant relies on what it purports is an online application completed by Plaintiff it only recently produced, in addition to a self-serving, canned affidavit executed by Defendant's representative for the purposes of this Motion. Defendant's Motion should be denied because there is a genuine issue of fact as to whether Plaintiff "expressly agreed" to arbitrate any and all disputes, including FCRA disputes, and because the alleged arbitration agreement is invalid and unenforceable.

### i.     Legal Standard

Arbitration is a matter of contract between parties and, therefore, a court generally cannot compel arbitration unless the parties agreed to arbitrate the dispute in question. *See Pennzoil Exploration & Prod. Co. v. Ramco Energy Ltd.*, 139 F.3d 1061, 1064 (5th Cir.1998) (*citing AT & T Techs., Inc. v. Commc'ns Workers*, 475 U.S. 643, 648, 106 S.Ct. 1415, 89 L.Ed.2d 648 (1986)). The Court uses a two-step analysis to determine whether a party may be compelled to arbitrate a dispute. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009). The first inquiry is whether the parties agreed to arbitrate the dispute, i.e., whether (1) there is a valid agreement to arbitrate claims and (2) whether the dispute in question falls within the scope of that arbitration agreement. Id. at 233–34. 3

### ii.    There is a Genuine Issue of Fact as to the Existence of a Valid Agreement.

In the employment context, Texas law requires an employer seeking to enforce an arbitration agreement to establish (1) that it provided unequivocal notice to the employee of the arbitration agreement or policy; and (2) that the employee validly accepted its terms. *In re Dillard Dep't Stores, Inc.*, 198 S.W.3d 778, 780 (Tex. 2006). Arbitration agreements are subject to defenses applicable to contract formation under state law. *See Goins v. Ryan's Family Steakhouses, Inc.*, 181 Fed.Appx. 435, 437 (5th Cir. 2006) (*citing 9 U.S.C. § 2; Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004)).

Defendant has not met its burden that "unequivocal notice" was provided and that Plaintiff "validly accepted" the terms. In fact, only recently did Plaintiff learn of the possibility of an arbitration agreement as Defendant inexplicably failed to raise the issue or provide documentation. Defendant's Motion and supporting documents fail to address why it never sought to compel arbitration and failed to produce the alleged employment application as part of its initial

disclosures or original discovery responses. It is not at all clear how this document, Exhibit B, was displayed or shared with Plaintiff at the time she allegedly "signed" it (there is no signature – just Plaintiff's typed name), or how she acknowledged it. On the second page, there is a laundry list of 14 statements Plaintiff allegedly agreed to "[I]n consideration of being employed"[1] and at the very end – in the same font size as every other statement – is the arbitration clause. Following that is Plaintiff's typed name and the date. This is hardly "unequivocal notice" or evidence of acceptance by Plaintiff. Moreover, by November 9th, Plaintiff had already applied, discussed and interviewed with multiple people, and all but had the job. In other words, she was already being considered for employment without this document being signed. There was no actual consideration – as is required under basic contract principles – provided in exchange for signing away her right to have any and all claims heard in a court rather than in arbitration.

Perhaps more important is the fact that the arbitration clause is unconscionable. Under Texas law, proof of unconscionability begins with two considerations: (1) the procedural aspect, i.e., how the parties arrived at the terms in controversy; and (2) the substantive aspect, i.e., whether there are legitimate commercial reasons justifying the terms of the agreement. *Pony Express Courier Corp. v. Morris*, 921 S.W.2d 817, 821 (Tex. App.–San Antonio 1996, no pet.); *see also Halliburton,* 80 S.W.3d at 571 (stating that procedural unconscionability refers to the circumstances surrounding the adoption of the agreement while substantive unconscionability refers to the overall fairness of the agreement itself). To determine whether an agreement is unconscionable, the Court must examine "the entire atmosphere in which the agreement was made; the alternatives, if any, available to the parties at

---

[1] It is also worth noting that this phrase could be construed to mean everything below will be given or become effective upon actual employment, not just in exchange for Defendant's mere consideration of her application.

6

the time the contract was made; the 'nonbargaining ability' of one party; whether the contract was illegal or against public policy; and whether the contract was oppressive or unreasonable." *Alamo Moving & Storage One Corp. v. Mayflower Transit L.L.C.*, 46 Fed. App'x 731, 2002 WL 1973484, at *2 (5th Cir. July 31, 2002) (unpublished) (*citing In re Turner Bros. Trucking Co., Inc.*, 8 S.W.3d 370, 376 (Tex. App.–Texarkana 1999, no pet.)).

The basis for procedural unconscionability is set forth in the preceding paragraphs – Plaintiff was a prospective employee with a criminal history who had been in discussions with Defendant for months. As Defendant's Affidavit states, the arbitration clause is in a standard, form document Plaintiff would not have had the opportunity to negotiate. The clause was not highlighted and did not appear separately from all the other language.

Even worse, though, is the preceding paragraph 13 that Defendant fails to mention in its Motion that unequivocally requires a finding of substantive unconscionability because if applied could effectively prevent Plaintiff from pursuing her statutory rights:

> I agree that any claim or lawsuit relating to my service with the Company or any of its subsidiaries **must be filed no more than six (6) months** after the date of the employment action that is the subject of the claim or lawsuit. **I waive any statute of limitations to the contrary.**

*See Exhibit B, Doc. No. 10-2 at p. 3 (emphasis added).* Including such a provision and requiring employees and prospective employees to agree to a six-month statute of limitations for federal, statutory claims that are ordinarily subject to a more reasonable timeline is unconscionable and renders the arbitration clause unenforceable. *See Paladino v. Avnet Computer Technologies, Inc.,* 134 F.3d 1054, (11th Cir. 2001), *citing Graham Oil v. Arco Prods. Co.,* 43 F.3d 1244, 1248–49 (9th Cir. 1994) (arbitration clause that purported to waive federal statutory remedies and to shorten statute of limitations for filing statutory claims was unenforceable), *cert. denied* 516 U.S. 907, 116 S.Ct. 275, 133 L.Ed.2d 195 (1995); *Stirlen v. Supercuts, Inc.,* 51 Cal.App.4th 1519, 60 Cal.Rptr.2d

7

138 (1997) (finding unconscionable and unenforceable an arbitration clause that, *inter alia,* limited remedy available in arbitration to a money award not to exceed the amount of actual damages for breach of contract); *see also* E. Allan Farnsworth, *Farnsworth on Contracts* § 5.8, at 70 (1990) (severance is inappropriate when the entire provision represents an "integrated scheme to contravene public policy").

The arbitrability of statutory claims like the FCRA "rests on the assumption that the arbitration clause permits relief equivalent to court remedies." *Paladino,* 134 F.3d at 1062 (*citing Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 28 (1991)). If the Court deems the arbitration clause valid, and Plaintiff is compelled to arbitrate her FCRA claims – which are subject to a two-year statute of limitations – she will be at risk of not being able to vindicate her claims on the merits given this limitation since she filed her Complaint at the end of March 2018, more than 60 days after Defendant violated the FCRA. Her claim was filed well within the applicable statute of limitations, but because of the unconscionable clause, she would be well beyond what Defendant has unilaterally deemed sufficient time to vindicate her rights. For these reasons, Defendant's Motion must be denied.

### iii. Defendant Waived the Right to Compel Arbitration.

In the alternative, Defendant's Motion should be denied because it sat on its hands until the eve of discovery closing to disclose the alleged arbitration agreement before seeking to compel arbitration.

"A party seeking arbitration substantially invokes the judicial process to the detriment or prejudice of the other party.' " *In re Mirant Corp.*, 613 F.3d 584, 588 (5th Cir. 2010) (quoting *Walker v. J.C. Bradford & Co.*, 938 F.2d 575, 577 (5th Cir. 1991)). Invocation of the process involves, " 'at the very least,' " engaging " 'in some overt act in court that evinces a desire to

resolve the arbitrable dispute through litigation rather than arbitration.' " *Id.* at 589 (quoting *Subway Equip. Leasing Corp. v. Forte*, 169 F.3d 324, 329(5th Cir. 1999)). In the Fifth Circuit, there are no bright-line rules with regard to waiver. *Id*. Instead, waiver is determined under the facts of each case. *Id*.

As detailed above, Defendant participated actively in this case, including discovery, and never raised arbitration as the correct forum until recently. By participating in and invoking the judicial process to Plaintiff's detriment, it has waived the right to seek arbitration. Plaintiff has been actively litigating this case for eight months and it is less than a month before the dispositive motion deadline. The discovery deadline has passed. To force Plaintiff to incur additional filing and attorney's fees, and effectively start over, would be unduly prejudicial to Plaintiff. Defendant's Motion should be denied.

## IV.

## Conclusion

For the above stated reasons, Plaintiff respectfully requests that Defendant's Motion be denied so that she can proceed with her claims in this Court.

Dated this 22nd day of November, 2019.   Respectfully Submitted,

**LAW OFFICE OF TRISTA JOHNSON**

*/s/ Trista M. Johnson*
Trista M. Johnson
Texas State Bar No. 24101089
Southern District of Texas ID No. 3180848
701 North Loop 336 E, Suite 106
Conroe, TX 77301
Telephone: 936.570.0575
Email: trista@txconsumerlawyer.com

**ATTORNEY FOR PLAINTIFF**

9

## CERTIFICATE OF SERVICE

This is to certify that I have this 20th day of November 2019 served a true and correct copy of the foregoing via email to the following counsel of record:

**LEWIS BRISBOIS BISGAARD AND SMITH, LLP**
Tracy Graves Wolf
Tracy.Wolf@lewisbrisbois.com
Brent Sedge
Brent.Sedge@lewisbrisbois.com
2100 Ross Avenue, Suite 2000
Dallas, TX 75201

**LAW OFFICE OF TRISTA JOHNSON**

*/s/ Trista M. Johnson*
Trista M. Johnson
Texas State Bar No. 24101089
Southern District of Texas ID No. 3180848
701 North Loop 336 E, Suite 106
Conroe, TX 77301
Telephone: 936.570.0575
Email: trista@txconsumerlawyer.com

**ATTORNEY FOR PLAINTIFF**